GREGORY A. ROUGEAU (194437)
DIAMOND McCARTHY LLP
150 California Street, Suite 2200
San Francisco, CA 94111
Telephone: (415) 692-5200
Facsimile: (415) 263-9200
e-mail: grougeau@diamondmccarthy.com

Counsel for Debtor-in-Possession
METROPOLITAN COFFEE AND CONCESSION COMPANY, LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| In re:<br><br>METROPOLITAN COFFEE AND CONCESSION COMPANY, LLC<br><br>Debtor. | Case No. 14-44242<br><br>Chapter 11<br><br>**DEBTOR METROPOLITAN COFFEE AND CONCESSION COMPANY, LLC'S MOTION TO CONVERT CHAPTER 11 CASE TO A CASE UNDER CHAPTER 7**<br><br>Date: August 20, 2015<br>Time: 10:30 a.m.<br>Place: Courtroom 215<br>Judge: Hon. Charles Novack |

METROPOLITAN COFFEE AND CONCESSION COMPANY, LLC, the Debtor and Debtor In Possession in the above-referenced case (the "Debtor"), respectfully moves the Court for the entry of an order converting this case from Chapter 11 to Chapter 7.

**INTRODUCTION**

This motion is made pursuant to Section 1112(a) and (b) of the Bankruptcy Code. As counsel for the Debtor indicated at the Court's last Chapter 11 status conference, the Debtor has sold all of its kiosks assets to Boundless Enterprises, LLC dba Scooter's Coffee ("Scooter's"). That sale has closed, and Scooter's is operating its coffee kiosks in BART stations. While the

Debtor was encouraged by numerous creditors to propose a plan of liquidation as opposed to conversion (the Debtor retains its litigation claims against former officers, directors and third parties, its equity interest in an affiliate restaurant entity here in San Francisco, and receives revenue from ATM machines), the Debtor concluded, given the time and expense associated with plan formulation and confirmation, and after conferring regarding the matter with the United States Trustee, that the liquidation estate should be administered by a Chapter 7 Trustee. This Motion should be granted.

## STATEMENT OF FACTS

The Debtor filed its Voluntary Petition under Chapter 11 of the Bankruptcy Code on October 20, 2014 (the "Petition Date"). It is currently a debtor-in possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108.

By way of background, the following facts are set forth in numerous pleadings the Debtor has filed during this case, and are supported by several declarations of Harry R. Kraatz, the Debtor's Responsible Person, submitted in support of Debtor's Amended Motion To Sell Kiosk Assets Out Of The Ordinary Course Of Business (the "Sale Motion"), filed on April 24, 2015. The Sale Motion has been assigned Docket No. 120 on the Court's docket. Mr. Kraatz's various declarations as to the background of this case have been assigned Docket Nos. 100 and 121. The Debtor respectfully requests that the Court take judicial notice of such pleadings, pursuant to Rule 201 of the Federal Rules of Evidence, made applicable to bankruptcy proceedings pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure.

The Debtor is a California limited liability company that was organized on or July 13, 2007. Prior to its Court-approved sale of its kiosk assets, it was in the business of owning, managing and operating Stand Alone Retail Centers (the "Centers"), or kiosks, in stations of the San Francisco Bay Area Rapid Transit District ("BART"), pursuant to a Retail Station Permit (the "Permit") assigned to the Debtor's parent corporation, Aegis Holding Company, LLC ("Aegis").

The Permit provides for the construction of up to eight (8) such Centers in various BART stations, but the Debtor operated only four Centers, in the Embarcadero, Montgomery, Berkeley, and Pittsburg BART stations. Before the aforementioned sale, three of those Centers

(Embarcadero, Montgomery and Berkeley) were Peet's coffee kiosks, under a prepetition Supply and License Agreement Aegis and Metropolitan entered into, as licensees, with Peet's Operating Company, Inc. ("Peet's"). The fourth did business as "Metro Market," and also brewed and served Peet's coffee under the aforementioned Supply and License Agreement.

As set forth in Attachment B35 of the Debtor's filed Schedule B, the Debtor estimated that construction cost of the eight retail Centers prescribed by the Permit would entail an expenditure of approximately $2,500,000.00. Over the following seven years, however, the Debtor's financial data indicates that it raised approximately $12,000,000 ($4,221,440.68 in LLC membership equity and approximately $7,731.599.07 in debt), even though the Debtor never built the remaining four Centers. While the Debtor's four Centers historically retained positive EBITDA, the Debtor has been insolvent from a "balance sheet" perspective virtually since its inception, and even from a cash flow perspective, it has been insolvent with the exception of only one year (2011).

The financial distress experienced by the Debtor over the past several years appears to have been attributable to the unanticipated costs associated with the constructing the Centers, but, more importantly, to the wrongful appropriation of corporate opportunities by the Debtor's former management, and the decision made by that management to divert funds that were specifically raised and earmarked for Bay Area Peet's kiosks in BART to non-investor affiliated businesses in New York and elsewhere without investor knowledge or approval. The primary assets used with the investors' and creditors' money, two New York restaurants, Sprig and Preserve 24, are now out of business (a third, Sprig Cafe in San Francisco, opened earlier this year, and is operating).

According to Mr. Kraatz, throughout the Debtor's operations, there was a total lack of corporate oversight and control. The Debtor's former management paid themselves, friends, family and others, compensation far in excess of industry standards. In sum, there was no check and balance on the comingling flow of millions of dollars from the Debtor to insiders and third parties complicit with insiders. Accordingly, the Debtor may have substantial claims against former insiders and third parties, under any number of theories.

Notwithstanding the millions of dollars that have "flowed" through the Debtor, the value of the physical assets in the Centers was very limited. When the Debtor filed its Schedule B, it

3
MOTION TO CONVERT CHAPTER 11 CASE
Case: 14-44242   Doc# 141   Filed: 07/31/15   Entered: 07/31/15 11:55:53   Page 3 of 5

estimated that the present aggregate value of the equipment was estimated by the Debtor as $170,255.53, but that valuation, at cost, and extracted from the Debtor's erroneous prepetition financial information, was inflated. Mr. Kraatz- after conferring with professionals in the coffee industry- later estimated that the value of the kiosk assets was only $50,000.

Following commencement of the Chapter 11 case, Mr. Kraatz stabilized the Debtor's operations and reduced overhead, so that the Debtor could remain in business long enough to position itself for reorganization or an asset sale. The envisioned reorganization or asset sale was problematic, however, for a few distinct reasons. First, the BART Permit- which did have value- was not issued to the Debtor, but to Aegis, and is set to expire in June 2017. Mr. Kraatz met, and had numerous telephone conferences and emails with, BART personnel to determine whether BART was willing to extend the Permit. BART personnel then disclosed that while they may be amendable to an extension, BART could not do so unilaterally, as (unbeknownst to the Debtor) it granted to a company called TransMart, Inc. ("TransMart") an option to lease, as master tenant (with rights to develop), those portions of the BART stations suitable for retail operations (including those stations in which Debtor presently maintains retail coffee stations), for a term of thirty (30) years, with options for two additional ten (10) year periods. TransMart later revealed to the Debtor that it was not willing to make any renewal commitments. The option impaired the Debtor's efforts to negotiate with parties that might have been willing to finance a reorganization, and greatly limited Mr. Kraatz's efforts to market the Debtor's assets.

After substantial marketing efforts, the Debtor sold its kiosk assets to Scooter's for $50,000 (the fair market value), subject to creditors' liens. Aegis concurrently assigned (with BART approval) the Permit, for $380,000 (the proceeds of which were used to pay Aegis' secured creditors). An order authorizing that sale was entered by the Court on May 18, 2015. The sale closed in early June 2015. For the most part, all post-sale adjustments and obligations between the Debtor and Scooter's have been satisfied by the parties, and Scooter's is operating the coffee kiosks.

4
MOTION TO CONVERT CHAPTER 11 CASE
Case: 14-44242    Doc# 141    Filed: 07/31/15    Entered: 07/31/15 11:55:53    Page 4 of 5

## LEGAL ARGUMENT

With the sale of the kiosk assets, and after conferring with the U.S. Trustee, the Debtor believes conversion of this case to Chapter 7 is appropriate.

Section 1112(a) of the Bankruptcy Code provides that a debtor may convert a case under Chapter 11 to a case under Chapter 7 unless it is not a debtor in possession, the case was originally commenced as an involuntary case, or the case was converted to a Chapter 11 case other than on the debtor's request. None of those factors apply here.

Section 1112(b) of the Bankruptcy Code provides that upon request of a party in interest, and after notice and a hearing, the Court shall convert a case under Chapter 7 or dismiss a case, "whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." The term "cause" includes diminution of the estate and the absence of a reasonable likelihood of rehabilitation. 11 U.S.C. § 1112(b)(4)(A). As noted above, given that the case is administratively insolvent and the expense of preparing a liquidating plan would only compound the administrative insolvency, the Debtor submits that cause for conversion exists under Section 1112(b).

## CONCLUSION

For the aforementioned reasons, the Debtor respectfully requests that the Court grant this Motion, and convert this Chapter 11 case to a case under Chapter 7.

Dated: July 31, 2015

DIAMOND McCARTHY LLP

By: */s/ Gregory A. Rougeau*
Gregory A. Rougeau
Attorneys for Debtor in Possession
METROPOLITAN COFFEE AND
CONCESSION COMPANY, LLC